UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ANGELA M. VANDEGRIFT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:18-CV-971 JD |
| | ) |
| ANDREW M. SAUL, Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Angela M. Vandegrift appeals the denial of her claims for disability insurance benefits and supplemental security income.[1] For the following reasons, the Court remands this matter to the Commissioner for further proceedings consistent with this opinion.

### I. FACTS

In 2015, Ms. Vandegrift filed applications for disability claiming an inability to work since February 13, 2015. Before ceasing work, Ms. Vandegrift had a steady work history for over a decade working as an optometric assistant, acute care center unit secretary, and medical assistant.

Ms. Vandegrift's medical issues date back to 2005. That year, Ms. Vandegrift was diagnosed with chronic myelogenous leukemia ("CML"). Her treating doctors, including Oncologist/Hematologist Dr. Luke P. Akard, prescribed Gleevec, an oral chemotherapy drug, to

---

[1] The regulations governing the determination of disability for disability insurance benefits are found at 20 C.F.R. § 404.1501 *et seq.*, while the supplemental security income regulations are set forth at 20 C.F.R. § 416.901 *et seq*. Because the definition of disability and the applicable five-step process of evaluation are identical in all respects relevant to this case, reference will be made to the regulations applicable to disability insurance benefits for clarity.

control the disease. To this day, she is forced to take the drug on a daily basis or run the risk that abnormal leukemia cells may grow again. As of June 2014, Ms. Vandegrift continued to work full time, despite suffering from significant drug-related side effects, including myalgias, bony discomfort, and profound fatigue. Even though she completed a surgical technician program, she was unable to work in the operating room because she couldn't stand and walk long enough.

In early 2015, Ms. Vandegrift ceased work and explained that the progression of her "horrible side effects," including severe muscle and joint pain (even with Tramadol), required her to take several hot baths and naps on a daily basis (R. at 267-288, 301-09). Ms. Vandegrift's employer attempted to accommodate her limitations by giving her more computer-related duties, but she still experienced extreme pain and fatigue. Working on her feet had become just as painful as sitting, and she could no longer work and care for her two children. Moreover, her husband had been reprimanded by his employer for missing too many days—the days which followed times when Ms. Vandegrift had physically overdone it. Things became even worse in November 2015, when Ms. Vandegrift contracted shingles and was diagnosed with neuropathy.

In March 2015, a reviewing state agent opined that Ms. Vandegrift's CML was non-severe. The Administrative Law Judge ("ALJ") assigned the agent's opinion "little weight" because it was "inconsistent with the evidence of record . . . [which] demonstrated she experiences significant side effects due to medication that would cause this condition to be severe." (R. at 21).[2] Upon reconsideration, a different reviewing state agent found in August 2015 that Ms. Vandegrift's CML was severe but determined that she was still capable of light

---

[2] Elsewhere in the opinion, the ALJ confusingly noted that "[a]lthough medical records mentioned some medication side effects, the evidence presented does not contain objective medical evidence to support greater limitations than assessed in this decision." (R. at 20). The ALJ did not detail the nature or severity of the side effects he was considering.

2

work. The ALJ afforded this agent's opinion only "partial weight" because it was "also inconsistent with the record as a whole . . . [and, in particular, more recent] treatment records concerning her shingles, post-herpatic neuralgia (sic), and polyneuropathy, and the fact that the claimant had to stand at some points during the hearing, [which] established that the claimant has additional exertional, postural, environmental, and foot control limitations." *Id*.

Upon a physical exam requested by the disability examiners, Dr. Carolyn Greer determined that as of August 2015, Ms. Vandegrift was only capable of standing for ten minutes and walking a single block (R. 436-44). Dr. Greer noted that Ms. Vandegrift walked with an "antalgic swing gait"—a statement discounted by the ALJ because "medical professionals overwhelmingly determined the claimant ambulated with a normal gait without the use of an assistive device and could get on and off the examination table without assistance." (R. at 20). During a psychological evaluation that same month, it was documented that "[a]fter sitting for an hour, [Ms. Vandegrift] had difficulty getting out of the chair. She had to push herself up with her arms and walked very slow." (R. at 448).

The following month, Dr. Akard provided a medical source statement in which he opined that Ms. Vandegrift's pain and other symptoms would require her to take eight or more unscheduled breaks on a daily basis. Dr. Akard believed that Ms. Vandegrift's chronic pain would require her to miss work more than four days per month and that the condition would last at least twelve months. The ALJ assigned only "partial weight" to Dr. Akard's assessment because (per the ALJ) it appeared to be based more on Ms. Vandegrift's subjective reports and given that Ms. Vandegrift was able to "care for her children and perform various activities of daily living with some help from others." (R. at 21).

A medical record from June 2016 indicated that Ms. Vandegrift could not perform physically strenuous activity, but that she was ambulatory and able to carry out work of a light or sedentary nature (R. 636). The ALJ gave this opinion "little weight" because its basis was unclear and the "evidence overall supports a finding that [Ms. Vandegrift] is capable of performing a restricted range of light work." (R. at 21).

At the hearing held on June 8, 2017, Ms. Vandegrift, her husband, and a vocational expert ("VE") testified. Ms. Vandegrift testified that she experiences deep muscle and bone pain in her legs and that she suffers from daily fatigue. To manage the leg pain, Ms. Vandegrift explained that she must alternate between sitting and walking, as well as take naps and hot baths as needed. She cannot sit for longer than twenty minutes, stand for longer than fifteen minutes, or walk for longer than forty minutes. Ms. Vandegrift washes dishes but leans over the counter to do so. She cares for her children but does so by watching them from the house or engaging in sitting activities. Ms. Vandegrift limits herself to small loads of laundry and her husband does the bulk of the grocery shopping. Ms. Vandegrift can vacuum for about ten minutes and dress herself with the exception of sometimes needing help to put on her socks. Her neuropathy causes an awkward gait and unsteadiness. She explained that when she quit working in 2015, she did so because she was crying every day from pain and exhaustion, and her husband was missing too much work in order to care for Ms. Vandegrift and their children.

In response to the hypothetical questions posed by the ALJ, the VE testified that a person of Ms. Vandegrift's age and background but limited to light work involving only four total hours of standing/walking, along with other exertional limitations, could perform past work as a unit clerk and optometric assistant, as well as other work, such as a small parts assembler, electronics worker, and laundry folder. The VE also testified that in order to be employable, a person could

not typically take additional unscheduled breaks, be absent more than one time per month, or be off-task more than ten percent of the time.

On September 29, 2017, the ALJ issued a decision denying Ms. Vandegrift disability benefits and finding her not disabled under the Social Security Act because she had a residual functional capacity[3] that allowed her to perform past work and other work in the economy. On September 28, 2018, the Appeals Council denied Ms. Vandegrift's request for review, making the ALJ's decision the final determination of the Commissioner. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Ms. Vandegrift seeks review of the Commissioner's decision, thereby invoking this Court's jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. STANDARD OF REVIEW

This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v.*

---

[3] Residual Functional Capacity ("RFC") is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

5

*Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to the ALJ's findings. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. DISCUSSION

Disability benefits are available only to individuals who are disabled under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations contain a five-step test to ascertain whether the claimant has established a disability. 20 C.F.R. §§ 404.1520, 416.920. These steps require the Court to sequentially determine:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

6

*Id.; Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, the Commissioner acknowledges disability. *See* 20 C.F.R. §§ 404.1520, 416.920. However, if a listing is not met or equaled, the ALJ must assess the claimant's RFC between steps three and four. The RFC is then used to determine whether the claimant can perform past work under step four and whether the claimant can perform other work in society at step five. *See id.* The claimant has the burden of proof in steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Here, Ms. Vandegrift offers the following reasons for remand: (1) the ALJ failed to properly weigh the medical opinion evidence; (2) the ALJ failed to adequately evaluate Ms. Vandegrift's subjective symptom testimony; (3) the ALJ failed to support his RFC determination with substantial evidence; and (4) under *Lucia v. SEC*, 138 S. Ct. 2044 (2018), the ALJ was not constitutionally appointed, thereby rendering the ALJ's decision invalid. For the reasons expressed below, the Court will remand this matter to the Commissioner due to the ALJ's failure to support Ms. Vandegrift's assigned RFC with substantial evidence and will invite the ALJ to address the remaining contentions on remand.

The ALJ must determine an individual's RFC, meaning "what an individual can still do despite his or her limitations," SSR 96–8p, based upon medical evidence as well as other evidence, such as testimony by the claimant. *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even as to limitations that are not severe. *Id.*; *see* 20 C.F.R. §

404.1529(a) (in making a disability determination, the ALJ must consider all of a claimant's symptoms, including pain, and how those symptoms affect a claimant's daily life and ability to work). The ALJ must then build "an accurate and logical bridge from the evidence to the conclusion" so that a court can assess the validity of the agency's decision and afford the claimant meaningful review. *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007).

The ALJ in this case concluded that Ms. Vandegrift had the RFC to perform a reduced range of light work, but the ALJ did not include any additional breaks, an at-will sit-stand option, or limitations with respect to production rate quotas. In making his determination, the ALJ essentially discounted each and every medical provider's opinion. To the extent the ALJ assigned some opinions only partial weight, the ALJ never bothered to identify which portions of those opinions relied upon actually addressed (and supported) Ms. Vandegrift's functional limitations for sustained work. Rather, the ALJ erroneously substituted his own knowledge for that of any trained physician or medical staff in determining Ms. Vandegrift's RFC. *See Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009); *Suide v. Astrue*, 371 F. App'x 684, 689-90 (7th Cir. 2010) (holding that the ALJ's rejection of a treating physician's opinion created an evidentiary deficit requiring remand, where other evidence in the record did not address the claimant's functional limitations); *Fly v. Colvin*, No. 3:14-cv-1840, 2015 WL 5124957, at *4 (N.D. Ind. Aug. 31, 2015) ("An ALJ is not a doctor, and his limitations must find a basis in the evidence.").

Because evidence existed which indicated that Ms. Vandegrift's pain, fatigue, and other symptoms caused limitations that were debilitating (or at least required a sit-stand option—as even the ALJ observed Ms. Vandegrift "had to stand at some points during the hearing"), it was the ALJ's responsibility to recognize the need for a further medical evaluation for purposes of

deriving Ms. Vandegrift's actual RFC. *See, e.g., Smith v. Apfel*, 231 F.3d 433, 437-38 (7th Cir. 2000). Because the ALJ failed to adequately explain how any medical opinion substantiated the RFC determination, this case must be remanded.

For purposes of remand, the Court would caution the ALJ not to discount physicians' opinions and Ms. Vandegrift's self-described limitations based on an exaggeration of the claimant's ability to perform activities of daily living ("ADLs"). While a claimant's ADLs are an appropriate factor for an ALJ to consider, the Seventh Circuit has "repeatedly cautioned that a person's ability to perform daily activities . . . does not necessarily translate into an ability to work full time." *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) (noting that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full time); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) (reasoning that the pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work). Thus, when an ALJ considers a claimant's activities, the ALJ should consider not only what the claimant does, but also how the claimant goes about performing those activities and what effect the activities have on the claimant. *Craft*, 539 F.3d at 680.

By way of example, the ALJ noted that Ms. Vandegrift is able to care for her children. However, Ms. Vandegrift specifically reported that she was unable to care for her children effectively while working full time. In fact, Mr. Vandegrift's job was being jeopardized because he was missing too much work while his wife was overexerted from working. Moreover, while the children are at school, Ms. Vandegrift testified that she must take morning and afternoon naps which last up to two hours. She must also take several hot baths throughout the day in order

to help alleviate her pain. When the children are at home, they typically engage in sitting activities that allow Ms. Vandegrift to periodically stand up and walk around. The ALJ also relied on the fact that Ms. Vandegrift performs household chores. But the record reflects that she did so with significant limitations and that she relied on her husband to do the bulk of the work. Thus, the ALJ's repeated reliance on Ms. Vandegrift's ability to perform ADLs as a means to discount her complaints and the doctors' opinions, without also acknowledging how those activities were actually performed and the repercussions of performing them, requires further consideration on remand.

Finally, in assessing the weight to give to Dr. Akard's opinion, the ALJ must consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion.[4] *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). In this case, the ALJ explicitly considered the length of the treatment relationship but failed to sufficiently consider the additional relevant factors in assigning Dr. Akard's opinion partial weight.

For the reasons discussed, the Court cannot conclude that the ALJ's RFC determination and the decision to discount the extent of Ms. Vandergrift's limitations, especially those caused by her pain and fatigue, were supported by substantial evidence. The error is not harmless. If, on remand, the ALJ decides to give greater weight to the opinions of the examining and treating medical professionals or to Ms. Vandegrift's subjective complaints, that could result in a more

---

[4] The treating physician rule governs claims filed before March 27, 2017. *See* 20 C.F.R. § 404.1527; *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). But even as to claims filed thereafter, an assessment of these various factors is required in weighing medical opinions.

restrictive RFC finding.[5] Accordingly, the Court remands this action to the Commissioner for further proceedings.

## IV. CONCLUSION

The remedy for the ALJ's shortcomings is further consideration, not the immediate award of benefits. And so, for the reasons stated herein, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: November 22, 2019

/s/ JON E. DEGUILIO
Judge
United States District Court

---

[5] Because an unsupported RFC served as the basis of the VE's testimony and the ALJ's finding that Ms. Vandergrift could perform her past and other work, the Court cannot affirm the findings at steps four and five.